BOOTH, Judge.
This cause is before us on appeal from a final order of the Department of Natural Resources denying Getty Oil Company (appellant) a permit to construct a drilling rig or platform within the waters of East Bay, Santa Rosa County, Florida. The issue presented is the interpretation of Florida Statutes, Section 377.242(1),[1] which provides, in pertinent part, as follows:
The Division of Resource Management shall be vested with the power and authority:
(1) to issue permits for the drilling, exploring for, or production of oil, gas, or other petroleum products which are to be extracted from below the surface of the land, including submerged lands, only through the well hole drilled for oil, gas, and other petroleum products. ... No structure intended for the drilling for, or production of. oil, gas, or other petroleum products may be constructed on submerged lands within one mile seaward of the coastline of the state or as otherwise provided in s. 377.24(7). No such structures shall be constructed within one mile of the seaward boundary of any state, local or federal park or aquatic or wildlife preserve or on the surface of freshwater lakes, rivers, and streams. No permit shall be granted within one mile inland from the coastline unless the division is satisfied that the estuaries, beaches and shore areas of the state will be adequately protected in the event of accident, (emphasis added)
At issue is the application of the above underscored language in Section 377.242(1) to the facts here, that is a drill site located more than two miles from any shoreline.
Appellant, the owner of State Drilling Lease No. 2338,[2] originally issued in July of 1968 by the Trustees of the Internal Improvement Fund of the State of Florida, proposes to erect a structure and to drill a vertical, hydrocarbon exploration well at a site located in the approximate center of *702 East Bay. The proposed well site is 2.7 miles from the nearest shoreline and six miles from the Gulf of Mexico. It is conceded that the drill site is not within one mile of any aquatic preserve.
Proceedings below, forming the background for and leading to the order sought to be reviewed, have been extensive. In pertinent part, these proceedings include appellant’s application in October, 1979 for a variance from Rule 17 — 4.28(8)(a), Florida Administrative Code, a dredge and fill permit, and an update of its 1971 application for a drilling permit.
On April 3, 1980, DER issued notices of intent to grant the variance and the dredge and fill permit. On June 16, 1980, DER issued a notice of intent to grant the natural gas flare construction permit.
By letter of June 18,1980, as amended by letter of June 23, 1980, DNR issued an initial notice of intent to recommend denial of the application for a permit to drill in East Bay on the ground that Section 377.-242(1), Florida Statutes, prohibited the construction of a drilling structure on submerged lands within the leased area.
On July 28, 1980, DNR issued a subsequent notice of intent to recommend approval, subject to specified conditions, of the drilling permit application in the event that its interpretation of Section 377.242 was overruled.
Appellant requested an administrative hearing pursuant to Section 120.57, Florida Statutes. Challenges[3] to the proposed DER and DNR actions were filed and consolidated for hearing.
At the commencement of the hearing resulting in the order to be reviewed, the parties announced that they had reached a stipulated settlement on all issues except those pertaining to the interpretation of Section 377.242(1). The stipulation of the parties required appellant to institute extraordinary environmental safeguards. That stipulation was accepted by the hearing officer as sufficiently comprehensive to meet the requirements, including state air and water quality standards, of pertinent statutes and regulations.
As required by Subsection 403.201(2), Florida Statutes, a hearing was held on the application for variance. The hearing culminated in an order of the hearing officer recommending DER accept the parties’ stipulation, issue the permits and grant the variance.[4]
The hearing officer considered each of the three separate provisions of Section 377.242(1), viz:
1. No structure intended for the drilling for, or production of, oil, gas, or other petroleum products may be constructed on submerged lands within 1 mile seaward of the coastline of the state or as otherwise provided in s. 377.-24(7);
2. No such structures shall be constructed within 1 mile of the seaward boundary of any state, local, or federal park or aquatic or wildlife preserve or on the surface of freshwater lakes, rivers, and streams; and
3. No permit shall be granted within 1 mile inland from the coastline unless the division is satisfied that the estuaries, beaches, and shore areas of the state will be adequately protected in the event of accident.
He concluded that the second and third above-stated provisions were factually inapplicable. He further concluded that the disputed statutory prohibition against con *703 struction of a drilling structure on submerged lands “within one mile seaward of the coastline of the state” applied only to submerged lands lying within a one-mile zone on the seaward side of the coastline. Since the proposed well site in East Bay would not be within the one-mile zone seaward of the coastline and would not be within any of the other aforementioned areas, the hearing officer recommended approval, subject to the terms of the stipulation, of appellant’s application for a DNR drilling permit.
The Department of Natural Resources adopted the hearing officer’s findings of facts but rejected his conclusion of law. DNR ruled that Section 377.242(1), Florida Statutes, precluded the construction of the drilling rig on the site in question. DNR reasoned that that clause forbidding construction of a structure on submerged lands “within one mile seaward of the coastline of the state,” prohibited the construction on all submerged lands, including bays and estuaries, inward of a point located one mile seaward of the coastline. By this view, the prohibition begins at a point one mile seaward from the coastline and then extends inward to encompass the entire state. Appellant’s application for a drilling permit was, accordingly, denied.
After oral argument and upon consideration of the briefs and record before us, we conclude that the order appealed must be reversed. DNR’s view that the clause “within one mile seaward of the coastline of the state” includes all submerged lands throughout the state and within one mile seaward of the coastline of the state, renders the remainder of the statute meaningless. Such an interpretation is contrary to well-settled rules of statutory construction, such as the plain meaning rule and the rule that a statute should be construed to give meaning to all its provisions. Had the Legislature intended to preclude drilling on all submerged lands within the state, it could have done so. It is presumed that the Legislature intended every part of the statute for a purpose.
There is no showing in the record before us that any laws of the State of Florida relating to the protection of the environment are violated by the project. On the contrary, the parties have stipulated that the project would meet all state air and water quality standards when implemented as set out under the terms of the stipulation. Various appellees urge that there will be adverse aesthetic and/or environmental effects from the project. However, in view of the stipulation and order below, no dis-positive issue is presented as to environmental effects of the proposed project, and the sole issue addressed herein is the interpretation of Section 377.242(1).
We accept, as did DNR, the findings of the hearing officer. We also hold that the hearing officer’s conclusions follow logically from, and are consistent with, the findings. We, therefore, adopt the hearing officer’s conclusions, in pertinent part, as follows:
4. ... [T]he applicant’s and the opposing parties’ versions of the meaning of the statute are in direct conflict. The disputed portion of section 377.242(1) is as follows:
No structure intended for the drilling for, or production of, oil, gas, or other petroleum products may be constructed on submerged lands within 1 mile seaward of the coastline of the state... .
Getty maintains that the prohibition applies only to structures located in a one-mile zone lying on the seaward side of the coastline. The opposing parties contend generally that the prohibition extends to other submerged lands that lie inland from the coastline.
5. ... Although the word “coastline” is not defined in Chapter 377, the parties generally agree that the seaward boundary of Santa Rosa Island constitutes the coastline at the area in question which extends westward across the opening of the bay.... Although the term “submerged lands” is subject to varying interpretations by the parties as to whether the term embraces both public and private areas, the basic meaning of the *704 words is not in dispute and they are uniformly acknowledged to include the submerged land at the proposed well site.
5. ... The key word in controversy is “within” as used in the statute. Getty interprets the word to mean “between,” i.e., between the coastline and a point one mile seaward of the same, whereas the other parties construe the word to mean “inward of,” i.e., inward of a point located one mile seaward of the coastline. When used as a preposition, as here, the word has several varying common meanings and therefore requires construction of the statute to determine the meaning intended by the legislature. The word “within” can be used variously to indicate “enclosure or containment” of a “specified difference or margin,” or “to the inside of.” Webster’s New Collegiate Dictionary (1979 Ed.).
6. Section 253.47, F.S., authorized the Board of Trustees of the Internal Improvement Trust Fund to lease for royalties or other agreed compensation the right to drill wells for the discovery and production of petroleum and natural gas in the bottoms owned by the state in its sovereign capacity of the “bays, lagoons, straits, sounds, gulfs, streams and lakes within the state.” Section 253.60 requires that development of any such lands for the production of oil and gas shall be in accord with state conservation and control law which prevail in the event of conflict.
7. Chapter 377, Part I, deals with the regulation of oil and gas resources and, in Section 377.06 the legislative intent is spelled out pertinently as follows:
377.06 Public policy of state concerning natural resources of oil and gas—
It is hereby declared to be the public policy of the state to conserve and control the natural resources of oil and gas in said state, and the products made therefrom; to prevent waste of said natural resources, to provide for the protection and adjustment of the correlative rights of the owners of the lands wherein said natural resources lie and the owners and producers of oil and gas resources and the products made therefrom and of others interested therein; to encourage and cause the development in said state of said natural resources of oil and gas and the products made therefrom, to encourage the continuous and economic supply of the demand therefor; to safeguard the health, property and public welfare of the citizens of said state and other interested persons and for all purposes indicated by the provisions herein .... (emphasis added)
It thus can be seen that the intent of the legislature in general is to encourage the development of oil and gas resources of the state while concurrently ensuring that the public welfare is protected. Section 377.242(1) is the statutory provision designed to provide such protection and must be construed in its entirety. In keeping with the legislative intent to encourage the development of petroleum products, DNR is vested with the authority to issue drilling permits for petroleum products which are to be extracted from below the surface of the land, including submerged lands. It is therefore apparent that submerged lands are not necessarily excluded as a drilling location.
The various restrictions set forth in subsection 377.242(1) show a statutory scheme to limit the issuance of permits or the construction of structures for drilling only in specified areas. The law includes a prohibition against structures within one mile of the seaward boundary of public parks and aquatic or wildlife preserves, and on the surface of freshwater lakes, rivers and streams. The statutory provision does not allow permits to be granted at locations within one mile inland from the coastline unless DNR determines that the estuaries, beaches and shore areas will be adequately protected in the event of accident.... [T]he common and plain meaning of the word [inland] is “into or toward the interior” and is therefore directional in sense. Webster’s New Collegiate Dictionary (1979 Ed.). The above restrictions therefore *705 must be deemed to cover both uplands and submerged lands located within the first mile landward of the coastline. When these restrictions are viewed in conjunction with the one in dispute, it becomes inescapable ... that the legislature intended to, inter alia, restrict drilling in a two-mile wide band centered over the coastline of Florida. Drilling structures are totally prohibited on submerged lands in the seaward half of the zone, and permits may be denied in the inland half, regardless of whether located in uplands or submerged lands, if the estuaries, beaches and shore areas are not adequately protected in the event of accidents. Getty’s proposed drill site does not lie within the two-mile zone. It is concluded that the restrictions of subsection 377.242(1) are not applicable to the proposed project.
Accordingly, the order of DNR is reversed and this cause remanded to DNR with directions to enter an order consistent herewith.
ERVIN and THOMPSON, JJ., concur.

. It was also contended that application of Section 377.242(1), Florida Statutes, so as to prohibit Getty'from conducting the proposed drilling on the submerged lands located in East Bay is unconstitutional. In view of our disposition of this case on statutory ground, the constitutional issues raised on appeal need not be addressed.

. The lease provides that the State, through its Trustees,
. . . demise, grant, lease and let exclusively unto the said Lessee the said land . . . for the purpose of investigating, exploring, prospecting, drilling of bore-holes for the discovery and production of oil, gas, sulfer, salt and/or other brines from the leased premises and for the laying of pipelines, building roads, tanks . .. and other structures and equipment needed to produce, save, take care of, treat, transport and own said products and, if the lands covered by this lease exceed 640 acres, to house its employees engaged in operations for drilling and/or production and handling.

. United Citizens Against Pollution, Inc., et at, Florida Audobon Society, Francis M. Weston Audobon Society, Thomas N. Wallin, Richard D. Radford, and Northwest Florida Sierra Club filed petitions against the Department of Environmental Regulation and Getty Oil Company. Richard D. Radford and Getty Oil Company filed petitions against the Department of Natural Resources. Florida Audobon Society, Thomas N. Wallin and United Citizens Against Pollution, Inc. filed petitions against Department of Natural Resources and Getty Oil Company.

. The variance was granted. A dredge and fill permit, number 57-24854-1E, was issued February 16, 1981. A construction permit, number AC57-31442, for a natural gas elevated flare was issued February 26, 1981.